# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STACEY GRAHAM<br>2259 Maureen Blvd. N<br>Obetz, Ohio 43207<br><br>　　　　Plaintiff,<br><br>　　v.<br><br><br>DISCOUNT DRUG MART, INC.<br>2290 Stringtown Road<br>Grove City, OH 43123<br><br>c/o Statutory Agent<br><br>Tom McConnell<br>211 Commerce Drive<br>Medina, Ohio 44256<br><br>　　　　Defendant. | CASE NO. 2:17-cv-336<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br><br><br>**Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Stacey Graham ("Plaintiff") and proffers this Complaint for damages against Defendant Discount Drug Mart, Inc. ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Franklin County, Ohio.

2. Defendant is an Ohio Corporation registered to do business in the Southern District of Ohio.

3. Plaintiff is an "eligible employee" as defined by the Family Medical Leave Act, 29 U.S.C. § 2611(2).

4. Plaintiff is an employee as that term is defined under the Family Medical Leave Act ("FMLA").

5. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A). Defendant was engaged in commerce or an industry or activity affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

## JURISDICTION AND VENUE

6. All counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331.

7. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that Plaintiff was employed at one of Defendant's stores in Franklin County, Ohio, at which all of the events in question took place.

## FACTUAL BACKGROUND

8. Plaintiff began working full time on or about December 13, 2004 as a Pharmacy Technician/Home Health Care Specialist. She remained in this position until her termination on or about December 15, 2016.

9. Defendant owns and operates several discount drug stores throughout the state of Ohio.

10. Plaintiff's job duties included but were not limited to: input of customer and prescription data, mixing medications, counting pills, measuring medication, labeling and giving instructions for medicine, assisting customers at point of sale, processing equipment sales and rentals, performing blood pressure checks and blood glucose screenings, measuring and fitting customers for ready-to-wear and custom compression garments, filling out all paperwork for

2

insurance billing, providing patient education on all equipment that was sold and maintaining and ordering medical equipment and pharmacy supplies.

11. Plaintiff received a performance review every year and always received positive reviews. Plaintiff received a raise in pay after every performance review, including after her review in April of 2016.

12. In 2013, Plaintiff applied for intermittent FMLA leave for two serious medical conditions, fibromyalgia and Dercum's disease.

13. Fibromyalgia is a chronic disease that causes widespread musculoskeletal pain, fatigue and tenderness in localized areas.

14. Dercum's disease is a rare disease that causes lipomas, or benign tumors, to form in the fatty tissue of the body. Surgical removal is often required.

15. Plaintiff's request for intermittent FMLA leave was approved. Plaintiff has applied for and has been approved for intermittent FMLA leave every year since 2013.

16. Plaintiff occasionally suffers from symptom flare-ups related to her serious medical conditions.

17. Plaintiff's fibromyalgia symptoms typically worsen in the winter because of the cold weather. Because of the unknown nature of when she will suffer a flare-up of her fibromyalgia symptoms, Plaintiff often had to take intermittent FMLA leave with little notice to Defendant.

18. Plaintiff always correctly followed Defendant's FMLA call-off process, which required her to inform her Supervisor every day she was taking intermittent FMLA leave.

19. When Plaintiff returned to work from intermittent FMLA leave, she would write down the number of hours of FMLA leave she took and would fax the information to

Defendant's Human Resources Department so it could keep an accurate count of her FMLA hours.

20. Plaintiff never received any formal disciplinary action until July of 2016. Plaintiff began to notice that as soon as she would return from intermittent FMLA leave, she would receive disciplinary action for things she did not do or that were outside of her control.

21. In July of 2016, Plaintiff took four days of intermittent FMLA leave to have nerves burnt in her spine, a remedy for fibromyalgia pain.

22. On the day she returned to work from intermittent FMLA leave, she was given her first disciplinary action by Supervisor and Pharmacy Manager, Mike Carter.

23. Plaintiff was responsible for ordering home-health products, like compression stockings, for patients that came into her location or called her location to place a home-health product order.

24. Plaintiff would take the order, send the order to Defendant's Corporate Office and the Corporate Office would ship the product to the correct store for the customer to pick up.

25. After Plaintiff made the initial order with Defendant's Corporate Office, she was not involved and was not responsible for the delivery of the items to the correct store.  She merely input the information and relied on Defendant's Corporate Office to process the order correctly and send it to the correct store.

26. On the day she returned from FMLA leave in July of 2016, Plaintiff received a write-up from Mr. Carter because compression stockings she ordered for a patient prior to her taking four days of FMLA leave were sent to the incorrect store in Dayton, Ohio.

27. Plaintiff told Defendant's Corporate Office to send the compression stockings to her location but the stockings were sent to the wrong store by no fault of Plaintiff's.

28. As Plaintiff was on leave, she was not aware the stockings had been sent to the wrong store, nor was she responsible for the mistake.

29. Despite having no control over this and it not being her fault, Plaintiff was written up for this mistake on the day she returned from FMLA leave.

30. After receiving this disciplinary action, Plaintiff called Defendant's Human Resources Department and spoke with Human Resources Representative, Jennifer Zacharias. She told Ms. Zacharias that she felt she was being targeted because she was written up right after she returned from FMLA leave for something that was not her fault and that she had no control over.

31. Ms. Zacharias told Plaintiff she would look into it and would get back to her. Plaintiff never received follow-up communication about this from Ms. Zacharias.

32. Plaintiff also took intermittent FMLA leave in November and December of 2016 for symptoms related to her fibromyalgia, as the winter months are much harder for her because of her serious medical condition.

33. On the day she returned from FMLA leave, Plaintiff was given two additional disciplinary actions from Supervisor Mike Carter.  It became even more clear to Plaintiff that Mr. Carter was retaliating against her for taking FMLA leave.

34. Prior to taking intermittent FMLA leave, Plaintiff had measured a client for compression stockings and placed the order with Defendant's Corporate Office.

35. Apparently the compression stockings were delayed in reaching the client because the client called and asked about the stockings while Plaintiff was on FMLA leave. Again, Plaintiff has no control over delivery of items once they are ordered from Defendant's Corporate Office.

36. Plaintiff was also written up for taking an "extended break," which she did not do.

37. Pursuant to Defendant's progressive disciplinary policy, Plaintiff was now on the brink of termination.

38. At the end of November of 2016 or in early December 2016, Plaintiff took a custom compression stocking order from a client. In order to place any custom order, Defendant required Plaintiff to obtain a valid prescription from the client's doctor, specifying a specific compression level, a diagnosis code and the front and back of the client's insurance card.

39. When this particular client came in to order these custom compression stockings, she did not bring her valid prescription with her- she brought a document indicating she was to have lymphedema therapy by mistake.

40. Plaintiff told the client that she needed the actual prescription with all required information before she could process the order but took her measurements anyway so she did not have to return for an unnecessary visit.

41. The client did not tell Plaintiff that she had already visited Defendant's Gahanna, Ohio, location and had already provided the correct prescription information to a representative at that location. Plaintiff had no way to know this and had no way to access that information provided to another store.

42. After this encounter, Plaintiff was on intermittent FMLA leave for approximately one and one-half weeks.

43. On the day she returned from leave and upon clocking in for her shift, Bradley Sanderson, Staff Pharmacist, told her that he/she was instructed to give her several disciplinary actions.

6

44. Plaintiff was told she was being suspended while Defendant's Corporate Office investigated further.

45. The first written disciplinary action involved a wheelchair and a person Plaintiff had never heard of. The situation that gave rise to this write-up occurred while Plaintiff was not even at work and she had no knowledge of the contents of the write-up.

46. Plaintiff explained she had no knowledge of the situation or the person involved.

47. Mr. Sanderson called Mr. Carter, who was off work that day and then Plaintiff was told this write-up would be "held back" but the rest were to be issued to her.

48. The second disciplinary action issued to Plaintiff on this day involved the client who ordered the custom compression stockings.

49. While Plaintiff was on FMLA leave, the client called to complain that she didn't receive her product in a timely manner, something Plaintiff has no control over.

50. Despite assurances that Defendant's Corporate Office was investigating the disciplinary actions issued to Plaintiff, she never received a phone call from anyone to investigate these matters.

51. In fact, the next communication Plaintiff received from Defendant was a termination letter on or about December 20, 2016.

52. It is abundantly clear that Plaintiff was retaliated against for her use of FMLA leave because Defendant issued her disciplinary action as soon as she returned from intermittent FMLA leave on multiple occasions.

53. All disciplinary action issued to Plaintiff lacked merit and served as pretext for her termination.

54. Defendant interfered with Plaintiff's rights to intermittent FMLA leave by retaliating against her, issuing disciplinary action upon her return from leave and terminating her employment.

## COUNT I
### Interference - Violation of the Family Medical Leave Act

55. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

56. Plaintiff was entitled to FMLA leave, as she suffers from a serious medical condition and applied for and was approved for intermittent FMLA leave from 2013 to 2016.

57. Defendant was aware that Plaintiff suffered from a serious medical condition that qualified her for FMLA leave because she applied for and was approved for intermittent FMLA leave from 2013 to 2016.

58. Defendant interfered with Plaintiff's FMLA rights by terminating her employment, thereby preventing her from taking the full 12 weeks of leave she was entitled to under the FMLA.

59. Defendant's termination of Plaintiff was directly related to her use of FMLA leave, evident by the fact that Plaintiff was disciplined on multiple occasions on the day she returned from FMLA leave and all of the disciplinary action issued to Plaintiff lacked merit.

60. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

61. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT II
### (Retaliation- Violation of the Family Medical Leave Act)

62. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten here.

63. Plaintiff attempted to exercise her rights under the FMLA, as she frequently took intermittent FMLA for her serious medical conditions.

64. Plaintiff suffered an adverse employment action when Defendant terminated her from her position in retaliation for taking intermittent FMLA leave and issuing disciplinary action to her that was without merit.

65. Plaintiff was written up on the day she returned from intermittent FMLA leave on multiple occasions and these disciplinary actions resulted in her termination. Defendant terminated Plaintiff because she took intermittent FMLA leave.

66. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

67. Defendant's violations of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay,

compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

>Respectfully submitted,
>
>/s/ *Rachel A. Sabo*
>
>Rachel A. Sabo (0089226)
>**The Friedmann Firm LLC**
>1457 S. High Street
>Columbus, OH 43207
>937-834-0069 (Phone)
>614-737-9812 (Fax)
>Rachel@thefriedmannfirm.com
>
>*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

>/s/ *Rachel A. Sabo*
>
>Rachel A. Sabo (0089226)